### CHAPMAN et al. v. GROSS R. SCRUGGS & CO. (No. 8504.)

(Court of Civil Appeals of Texas. Dallas. April 2. 1921. Rehearing Denied May 7, 1921.)

1. Insurance ⟨⟩83(1)—Manager of insurance companies entitled to recover from agent's surety on account of default in payment of money required by bond.

The manager of insurance companies, who, as such, appointed a defendant agent for such companies, and took the bond sued on from defendant with other defendants as sureties to secure the payment to him of money coming into the agent's hands under such appointment, had a special property in the premiums charged for the policies written by the agent in such companies, and was entitled to recover against a surety on the bond, where it was shown that default had been made by the agent in the payment of the money required by the terms of the bond; it being sufficient to authorize recovery by such insurance companies' manager to show that the conditions of the bond had been breached and the amount owing to him by reason thereof.

2. Principal and surety ⟨⟩59 — Liability of surety is strictissimi juris.

The liability of sureties is strictissimi juris, and not to be extended by construction.

3. Insurance ⟨⟩83(1)—Manager of insurance companies not required to prove he had paid insurance companies on agent's default as condition of recovery on bond.

It was not essential as a prerequisite to the right of the manager of insurance companies to recover on a bond given by a defendant appointed by him as agent, the other defendants being his sureties, to prove that he, the appointing manager, had paid the insurance companies on defendant agent's default or become liable to them.

4. Trial ⟨⟩351(5)—Refusal of requested special issue not material error in view of issue submitted.

In an action by the manager of insurance companies against the agent appointed by him and sureties on such agent's bond, where a special issue was submitted by the court to require the jury to find the net balance due by the agent to the manager on the agency account after allowing all credits, payments, and offsets properly pleaded and proven, there was no material error in the refusal of a special is-

sue requested by a surety as to whether or not any portion of the account sued on was satisfied as between plaintiff manager and the agent.

5. Appeal and error ⟨⟩932(1) — Presumption is that trial court held that amount for which judgment rendered against single defendant was reasonable.

Where no request was made for submission of a special issue on the value of attorney's services as against a single defendant, it must be presumed in support of the court's judgment that the trial court concluded and held that the amount for which judgment was rendered against such defendant, there being evidence to authorize it, was reasonable.

Error from District Court, Dallas County; Kenneth Foree, Judge.

Suit by Gross R. Scruggs & Co. against James R. Chapman and others. To review the judgment, defendants bring error. Affirmed.

Thompson, Knight, Bauer & Harris and Will C. Thompson, all of Dallas, for plaintiffs in error.

Burgess, Burgess, Christman & Brussdidge, of Dallas, for defendant in error.

TALBOT, J. The defendant in error, Gross R. Scruggs, doing business as Gross R. Scruggs & Co., who will hereinafter be designated as plaintiff, brought this suit against James R. Chapman, J. Stewart Boyles, Mike Hogg, J. B. Ross, and G. C. Street, Jr., who will hereinafter be referred to as defendant, alleging, in substance, that he was in the business of general agent for certain fire insurance companies, and that Chapman was a local fire insurance agent at Houston, Tex., doing business under the name of Jas. R. Chapman & Co.; that on October 2, 1909, the defendant, desiring to represent certain companies for which plaintiff was general agent, made plaintiff a bond with Ross and Street as sureties, the terms of which are alleged; that on November 17, 1911, the defendant, desiring to obtain the business of other companies represented by plaintiff, made plaintiff another bond, with Ross and Boyles as sureties, the terms of which are alleged; that on January 27, 1914, the defendant, being desirous of obtaining certain companies represented by plaintiff, made plaintiff a bond with Boyles and Hogg as sureties, the terms of which are alleged; that these several bonds bound the principal and the sureties to the conditions thereof, which conditions are set out; that in reliance upon these bonds Scruggs issued to James R. Chapman commissions to represent the several companies named in them; that the several bonds were required on account of Chapman's increased business and increased liability; that Chapman became indebted on New York Plate Glass Insurance

Company business in the sum of $89.32, which has never been paid; that Chapman became indebted for Delaware Underwriters' Insurance Company business in the sum of $7,197.-83, as per attached exhibit, less credits of $3,124.92; that Chapman is entitled to a further credit of $13.70; that Chapman is entitled to a further credit of $1,079.80 for cash paid on his account; that he is entitled to a further credit on Ross business of $98.41; that Chapman's total indebtedness, after deducting above credits, is $2,880.92; that Chapman is liable for protest fees of $4 on a check which he allowed to go to protest, which fees plaintiff paid out; that plaintiff expended $209.10 for railroad and Pullman fare and traveling expenses in attempting to enforce compliance with Chapman's obligation; that plaintiff has employed an attorney for this suit and is entitled to a reasonable attorney's fee in the sum of $500; that Chapman, in company with the plaintiff's representative, checked over the exhibits to the petition going to show the account, and agreed to the correctness of the same, except for items totaling $198.02; that the defendants are liable for the amounts of the respective bonds executed by them. Street filed an answer, but, since judgment was rendered in his favor, its terms are immaterial. Boyles filed an answer, but did not appear at the trial and defend the suit.

The defendant Mike Hogg filed a first amended answer to which plaintiff urged certain exceptions which were sustained, and thereupon he filed a second amended answer in which he alleged a general demurrer, special exceptions, a general denial, and that it was the intention of the parties that he should not be liable for any past-due indebtedness, nor for any indebtedness owing at the time of the execution of his bond, and that, in so far as same may fail to express the true intention of the parties, it should be reformed, and that said instrument by its terms does not make him liable for past-due indebtedness; that on the date of the bond Chapman was indebted to plaintiff in an amount well known to plaintiff, for which the plaintiff held his note or other obligation for all or a major portion of such indebtedness, together with certain collaterals to secure the same, said collaterals consisting of note or notes of J. B. Ross, and shares of stock in the Hibernia Bank & Trust Company; that notwithstanding there was no obligation on defendant to pay said note, nor past-due indebtedness, the plaintiff applied payments made by Chapman after said date to the extinguishment of said note and past-due indebtedness, and released the collateral above mentioned without right so to do, and as to the amount of payments so made, and as to the value of such collateral, defendant is entitled to credit and judgment. He further alleges that his liability cannot be greater than the amount of premiums actually collected by Chapman, and that the account sued on consists in part of uncollected premiums and in part for premiums the collection of which plaintiff was to look after, particularly those of the Ross family, and in part on policies written after Chapman's commission had been revoked. He alleged he was not liable for protest fees, nor the item of $209.10, in that his bond does not cover such items, nor is he liable for the items set out in Exhibit E to the petition. He alleged that his liability is not a joint and several one, but a pro rata liability only, and asked judgment against his codefendants and for subrogation. Plaintiff filed a trial amendment, correcting the terms of the bond executed by Chapman, Ross, and Street in 1909, and correcting the terms of the bond of Chapman, Ross, and Boyles in 1911. The case was submitted to the jury on special issues, and they found that Chapman owed to the plaintiff on the agency account sued on the sum of $2,651.50; that the last item of said account became due on December 28, 1914; that the amount of charges' or expenses, other than legal, plaintiff incurred in obtaining compliance with the contracts sued on was $113.35; that $58.05 of same were incurred in 1914, and $55.-30 of same were incurred in 1915; that a reasonable attorney's fee for filing and prosecuting the suit was $325; that the amount due by Chapman on January 27, 1914, was $1,304.76. Judgment was rendered in favor of Street and for plaintiff and against Chapman, Ross, Boyles, and Hogg in varying amounts; against defendant James R. Chapman, as principal, and J. A. Ross and J. Stuart Boyles, as sureties, jointly and severally, for the sum of $3,889.92. The judgment further ordered that of said total sum plaintiff recover of defendant Mike Hogg, as surety, $3,325 thereof (being the total sum of $3,000 provided in said bond of January 27, 1914, and $325 as attorney's fees), with 6 per cent. interest thereon from November 12, 1919, together with his costs in this behalf expended. The defendant Hogg duly filed a motion for a new trial, which was overruled, and he applied for writ of error, filed his bond, and citation in error was duly served.

The questions presented for decision will sufficiently appear without a statement and discussion seriatim of the several assignments of error.

[1] The court did not err in refusing to give the defendant Hogg's special charge directing the jury to return a verdict in his favor requested upon the theory that the evidence showed that the plaintiff did not become damaged in any amount by virtue of the failure, neglect, or refusal of the defendant Chapman, or of himself, to do or perform any or all of the obligations and acts called for by the bond sued on. It may be conceded that the evidence shows that the

policies were actually issued by insurance companies, and not by the plaintiff, and that there is no showing that the plaintiff sues on behalf of such companies, or that the plaintiff paid any of the insurance companies any portion of the amount sued for by him; but, as said by counsel for the defendant, it appearing that plaintiff was manager for the Southwestern department of the insurance companies in question, and that he as such manager appointed the defendant Chapman agent for such companies and took the bond sued on to secure the payment to him of money coming into Chapman's hands under said appointment, plaintiff had a special property in the premiums charged for the policies written by Chapman in such companies and was entitled to recover against defendant Hogg, as surety on the bond, it being shown that default had been made in the payment of the money required by the terms of the bond. The amount which the principal and sureties on the bond obligated themselves to pay was not limited to the amount plaintiff might have to pay or conditioned upon his liability to pay to the insurance companies for which Chapman issued the policies under his appointment by plaintiff, and it was sufficient to authorize a recovery by him to show that the conditions of the bond had been breached and the amount owing to plaintiff by reason thereof. The bond recites that Gross R. Scruggs & Co., as individual and as manager of the Southwestern department of the surety companies named in the bond, to wit, Delaware Underwriters' Agency of the Westchester Fire Insurance Company of New York and New York Plate Glass Insurance Company, appoints Jas. R. Chapman as agent to write insurance policies in said companies in and for Houston, Tex., and vicinity, and Chapman, as principal, and Hogg and his cosurety obligate themselves in the sum of $3,000, conditioned that Chapman "shall faithfully and punctually pay over at Dallas, Tex., to said Gross R. Scruggs & Co., as managers and as individuals, all sums of money that may become due them, or either of them," from time to time, for premiums on policies issued by such agent, whether such premiums have been collected by Chapman or not, and also all moneys whatever collected or received by said Chapman for any account whatever for said Gross R. Scruggs & Co., whether as managers or as individuals. The witness R. S. Graham testified that Chapman was appointed agent by plaintiff in 1909, and gave the three bonds sued on, Hogg being surety on the last one, because of an increase in his business as agent under plaintiff's appointments. The local fire insurance agents solicited business, secured policies, and made daily reports to plaintiff's office in Dallas, giving the name of the assured, the number of the policy, the rate, the commencement date and the expiration date, the term cov-

ered and the rate, and the premium. This witness further testified:

That in the fall of 1914 he checked over the account sued on in this case with Chapman; "that he checked each item and each policy, each premium and each credit that Mr. Chapman was entitled to, and he agreed with witness that the check was correct; that the total charges against Mr. Chapman totaled $7,197.83, and the total credits are $4,059.21."

A. R. Eichlitz, witness for plaintiff, said he was, and had been for 14 years, bookkeeper for plaintiff, his duties being to check agents' accounts, reporting to the company and handling all of the moneys of the office. He further said:

"I hold in my hands a statement identified by Mr. R. S. Graham, the witness who preceded me, being the statement of Mr. Chapman's account. I made this account myself from the agency ledger which I have mentioned. * * * I could take this statement and verify it in the presence of the jury. I also have a cash account kept with Mr. Chapman's agency."

He further said:

"I kept these books that I have been talking about myself. I know that they are correct and correctly state the accounts between the plaintiff and the defendant."

[2] It seems practically undisputed that the principal, Chapman, issued policies in the companies mentioned in the bond sued on and in which he had authority to issue policies; that the items of the account are for premiums on policies issued by him and for which he and his sureties obligated themselves to account to plaintiff, and, in our opinion, plaintiff was entitled to recover against the defendant Hogg as one of such sureties the balance unpaid by his principal. Such holding does not, under the facts of this case, contravene the principle that the liability of sureties is strictissimi juris, and cannot be extended by construction. Its effect is not to extend the liability of the surety Hogg so as to embrace transactions beyond the scope of the contract with which the bond was executed, nor to require him to answer for the failure of the agent, his principal, which does not relate to some duty other than that imposed by the contract. On the contrary, we think the holding is clearly authorized by and in harmony with the very terms and spirit of the contract and bond. As illustrative of the plaintiff's right to maintain the suit, as we see it, we quote the following from the case of Hazelton v. Locke, 104 Me. 164, 71 Atl. 661, 20 L. R. A. (N. S.) 35, 15 Ann. Cas. 1009, decided by the Supreme Court of Maine:

"It is contended that the evidence shows that the money belongs to the Equitable Life Assurance Society of the United States. It appears from the evidence that the plaintiff was the manager of this society in the state of Maine, and that the money in question was a

premium due to it on one of its life insurance policies. By the contract the defendant was appointed by the plaintiff to canvass for applications, and to collect the premiums on all policies obtained by him, and to pay over forthwith to the plaintiff or to the assurance society. As between the parties, the plaintiff, having a special property in the premiums collected, was entitled to receive them. This right gave him a remedy against the defendant upon his refusal to pay over the same as directed."

[3] It was not essential as a prerequisite to plaintiff's rights to recover on the bond that he prove that he had paid the insurance companies or become liable to them. The obligation of the plaintiff as general agent, if any, to the insurance companies, was wholly independent of the obligation of the local agent, James R. Chapman & Co., to him.

Nor did the court err in refusing to instruct the jury to return a verdict in favor of the defendant either for the item of $1,304, the item of $4 protest fee, or the item of $1,-249.05. Our conclusion is that the defendant Hogg was not entitled to a peremptory instruction as to the item of $1,304 either upon the claim that the terms of the obligation sued on do not impose a liability on him, or that the release of collateral security, as contended for, released Hogg to the amount of said item. It appears that all of the business dealings of the parties related to and grew out of the subject-matter of the bond, and it was not shown that the note representing the $1,304 was given by Chapman to plaintiff for something other than insurance premiums covered by the terms of the bond. There was no evidence, as we understand, that the notes and bank stock released by Scruggs was collateral or security for the debt sued on, nor was there any evidence, so far as we have discovered, that such collateral, if such it was, possessed value. The witness Graham testified:

"I did not take from Mr. Chapman a note for $1,304 on October 21, 1913, that I remember of. I have read my letter of January 30th, and I do not remember the note of $1,304, nor the security attached to it. We did sometimes take notes like that."

The letter written to Chapman by plaintiff regarding the $1,304 note does not say what it was for, or to whom payable.

Eichlitz testified:

"The account does not show a balance of $1,304. $690.34 is the balance due November 1 [1913], but here is an item of $1,304 that he sent us November 17 [1913] to apply to his back balance of July, August, and September, and the check was returned if that is the charge, and there is also a $076 charge for a telegram also."

He further said:

"Chapman's account with us has been an open account all the time. Nothing in these books appear except the open account trans-actions. It is a fact that the only business relations between Chapman and the plaintiff was with reference to this agency business, and premiums upon policies issued by the agency. I have detailed in a lump sum the amount of money which Chapman owes to Gross R. Scruggs, which is $2,974.22. The bond which Mr. Hogg signed with Mr. Chapman is dated January 27, 1914. The amount of Chapman's debt to plaintiff on that day was $1,249.05."

The bond sued on covered indebtedness owing by Chapman at the date of its execution, as well as future indebtedness arising between the plaintiff and Chapman, and it occurs to us that, even if the $1,304 note mentioned in the letter of date January 30, 1914, and quoted in the defendant's brief, had been given to cover past-due insurance premiums, which was not shown, defendant is in no position to complain because the plaintiff surrendered the note and instead thereof relied upon the open account. There is, however, as suggested by plaintiff, nothing in the evidence showing for what or to whom said note was given, and the uncontradicted testimony shows that all of the transactions between the plaintiff and Chapman were conducted in the form of an open account. As pointed out by the plaintiff, the item of $1,-304 does not appear in the August account of 1913, as the defendant seems to contend, but appears in its regular order in the credit column of the statement of October 14, 1913, as the account was balanced at the end of August, 1913. That entry is prior to the date of the note for $1,304, which the letter recites was October 21, 1913. The next entry is $1,-304, dated November 17, 1913, and the next is a debt of November 22, 1913, for a check of $1,304.78, which evidently does not relate to the note. The defendant says in his brief that said last item of $1,304 "is carried as a charge through December," citing the statement of facts. But the plaintiff replies, which seems to be correct, that the figures referred to is not an "entry" but a "footing," and insists that "eliminating that footing the several entries referred to appear twice as debits and twice as credits, thus offsetting each other and leaving no charge in the account except the protest fees and telegram."

The evidence being sufficient to show that the defendant Hogg was liable for the amount of the judgment rendered against him, and it not appearing that he was entitled to a credit of the $1,304 or any part of that sum for which he had not been, in fact, credited, the judgment was not excessive. In response to special issues submitted the jury found that the defendant Chapman owed the plaintiff on the agency account sued on $2,651.50; that the last item of said account became due December 28, 1914; that the plaintiff incurred in obtaining compliance with the contracts sued on $113.35; and that a reasonable attorney's fee for filing and prosecuting this suit was $325. The terms of

the obligation sued on were broad enough to impose upon the defendant Hogg liability for the protest fees charged, and there was no error in refusing to instruct the jury to find in favor of the defendant for that item. The bond contained a provision to the effect that said principal and sureties obligated themselves "to pay any and all attorney's fees, charges, or expense, legal or otherwise, which the said Gross R. Scruggs & Co., as managers or as individuals, may incur in obtaining compliance with this contract."

Likewise there was no error in refusing to charge the jury at the defendant's request that the defendant Hogg was not liable for the item of $1,249.05. The bond sued on, as has been shown, required the defendant to pay the plaintiff all sums due or to become due under Chapman's appointment as agent, whether for premiums on policies issued in the companies named in the bond or any other for which Chapman was appointed agent by plaintiff. The evidence showed that the indebtedness sued on arose out of Chapman's appointment under the terms of the bond, and plaintiff was entitled to recover the amount due by Chapman at the time of his appointment, as well as any amount becoming due thereafter. Such liability would include the said item $1,249.05.

Assignments of error from the sixth to the eleventh, inclusive, have been practically disposed of against the defendant by what we have already said. The evidence did not show conclusively either that the plaintiff, at any time prior to January 27, 1914, applied any payments made by Chapman upon the note for $1,304, or that plaintiff accepted the note for $1,304 in payment of Chapman's November, 1913, balance; nor was the evidence sufficient to show that plaintiff held collaterals to Chapman's obligation to him under the contract sued on.

There is some testimony to the effect that in the latter part of July, 1914, the plaintiff undertook or contemplated the cancellation of Chapman's appointment, but it seems undisputed that such cancellation did not become effective, but that the plaintiff thereafter continued to accept business written by Chapman under his original agency contract. Therefore the court did not err in refusing to give the special charge asked by the defendant and made the basis of his thirteenth assignment of error. There was really no sufficient evidence to require the submission of the question whether or not the agency of Chapman had in fact been canceled by plaintiff on July 15 or the 22d day of July, 1914.

[4] We see no material error in the refusal of the defendant's requested special issue as to whether or not "any portion of the account sued on" of which complaint is made by the nineteenth assignment was satisfied as between the plaintiff and Chapman. Special issue No. 1, which was submitted by the court, necessarily required the jury, it seems, to find the net balance due by Chapman to plaintiff on the agency account after allowing all credits, payments, and offsets properly pleaded and proven. Besides, the plaintiff purported to plead and set out in detail the several items of debits and credits in an exhibit attached to his petition showing the balance claimed to be due and unpaid, and it occurs to us that, if the defendant believed himself entitled to credit or set-off not so shown, it was incumbent upon him to plead the same, and that, having failed to do so, he cannot claim any such credit or set-off.

[5] We are not prepared to reverse the judgment as to attorney's fees. No request was made for the submission of a special issue as to the value of attorney's services as against the defendant Hogg alone, and under the rule in this state it must be presumed, in support of the court's judgment, that the trial court concluded and held that the amount for which judgment was rendered against the defendant Hogg, there being evidence to authorize it, was reasonable. The plaintiff pleaded that a reasonable attorney's fee would be $500, and it was shown without contradiction that 15 per cent. of the amount involved would be reasonable for the suit on the three sets of bonds, involving an account of $2,900, against the principal and sureties for the same, with $209 additional as expenses. The judgment against Chapman was $3,889.92, and provides that of the total sum the plaintiff recover of the defendant Hogg as surety $3,325 thereof, being the penal sum of $3,000 stipulated in the bond of January 27, 1914, and $325 as attorney's fees, together with interest, etc.

All of the assignments of error have been considered, and those not mentioned in the opinion have either been determined by what we have already written, or they disclose no reversible error.

The judgment is affirmed.